# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| MOSHE FARHI, on behalf of himself and all others similarly situated, | ) ) ) | Case No. 9:16-cv-80580-RLR |
| Plaintiff, | ) ) | |
| v. | ) ) | **T-MOBILE USA, INC.'S MOTION TO COMPEL ARBITRATION** |
| T-MOBILE USA, INC., | ) ) | |
| Defendant. | ) ) | |

Pursuant to 9 U.S.C. §§ 3, 4 of the Federal Arbitration Act ("FAA") and Federal Rule of Civil Procedure 12(b)(1), Defendant T-Mobile USA, Inc. ("T-Mobile") hereby respectfully moves this Court to enter an Order: (i) compelling arbitration of Plaintiff Moshe Farhi's ("Plaintiff") claims as required by his arbitration agreements with T-Mobile; and (ii) dismissing this litigation against T-Mobile or alternatively staying it until such arbitration is complete.  T-Mobile's Motion to Compel Arbitration should be granted because Plaintiff is contractually required to arbitrate, rather than litigate in court, his individual claims against T-Mobile.[1]

## INTRODUCTION

Plaintiff entered into two binding and enforceable arbitration agreements with T-Mobile. Those agreements require Plaintiff to arbitrate the purported claims he attempts to assert here.  As set forth more fully below, T-Mobile's Motion to Compel Arbitration should be granted because:

- Plaintiff agreed to arbitrate his disputes with T-Mobile when he entered into an Equipment Installment Plan Loan Agreement ("Loan Agreement") and a Service Agreement with

---

[1] Whether this case is ultimately dismissed or stayed, this motion constitutes T-Mobile's responsive pleading required by Federal Rule of Civil Procedure 12.  *See Bell v. Atl. Trucking Co.*, No. 309-cv-406, 2009 WL 4730564, at *2 (M.D. Fla. Dec. 7, 2009), *aff'd sub nom.* 405 F. App'x 370 (11th Cir. 2010) ("Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to [Rule] 12(b)(1).")); *MRI Scan Ctr., LLC v. Nat'l Imaging Associates, Inc.*, No. 13-60051, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013) (same).

T-Mobile.  T-Mobile's Terms and Conditions also require arbitration, and Plaintiff expressly accepted and agreed to be bound by them in his Service Agreement.  *See* Declaration of Christopher Muzio ("Muzio Decl.") (attached hereto as Exhibit "A"), Tabs 1–3.

• The scope of Plaintiff's arbitration agreements is unquestionably broad.  Plaintiff agreed to arbitrate "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS LOAN AGREEMENT**," as well as "**ANY AND ALL CLAIMS OR DISPUTES RELATING TO [his Service Agreement] . . . [T-Mobile's] SERVICES, DEVICES, OR PRODUCTS, INCLUDING ANY BILLING DISPUTES**."  Muzio Decl., Tab 1 ¶ 3 & Tab 3 ¶ 2 (emphasis in original).

• Plaintiff's claims fall squarely within the scope of his arbitration agreements.  Plaintiff bases all of his claims on the overarching allegation that T-Mobile improperly accelerated amounts Plaintiff owed under the Loan Agreement when Plaintiff terminated his Service Agreement.  *See, e.g.*, Compl. ¶ 30 ("T-Mobile leveraged his *Device Agreement* to essentially penalize Plaintiff for terminating his *Service Agreement*.")[2] (emphasis added).  There can be no question that these claims relate to or concern the Loan Agreement and the Service Agreement, just as there can be no question that they also relate to and concern T-Mobile's services, devices, or products.

This Court should not relieve Plaintiff of the contractual obligation to arbitrate that he willingly undertook.  Instead, under the FAA, this Court's role is to enforce the parties' arbitration agreements and move this dispute into arbitration as quickly as possible.  T-Mobile's Motion should be granted.[3]

---

[2] Plaintiff refers to the Loan Agreement as a "Device Agreement" in the Complaint.  The Loan Agreement referenced here and the Device Agreement referenced by Plaintiff are the same contract.  *Compare* Muzio Decl., Tab 1 *with* Exhibit to Compl.  Plaintiff, however, included only the first page of the contract as his exhibit, while T-Mobile has attached the full contract here.

[3] This lawsuit further violates Plaintiff's contracts with T-Mobile because Plaintiff failed to satisfy a condition precedent to filing suit.  Both of Plaintiff's agreements, discussed in detail below, required him to provide T-Mobile with an opportunity to resolve his disputes before bringing a legal claim:

> For all disputes, whether pursued in court or arbitration, you must first give us an opportunity to resolve your claim by sending a written description of your claim to the address [] below.  We each agree to negotiate your claim in good faith.  If we are unable to resolve the claim within 60 days after we receive this claim description, you may pursue your claim in arbitration . . . .

Muzio Decl., Tab 1 ¶¶ 3, 11 & Tab 3 ¶¶ 2, 16.  Plaintiff did not provide written notice as required by his agreements.  Muzio Decl. ¶¶ 11, 22.

## BACKGROUND

On June 9, 2015, Plaintiff entered into two contracts that are relevant to this dispute: (1) an Equipment Installation Plan Loan Agreement ("Loan Agreement," referred to by Plaintiff as the "Device Agreement"), and (2) a Service Agreement for T-Mobile service (the "Service Agreement"). Muzio Decl. ¶¶ 6, 7, 12 & Tabs 1, 2.

**I.     The Loan Agreement**

The Loan Agreement is a financing contract governing Plaintiff's purchase of four iPhone 6 devices to be activated for T-Mobile service. Muzio Decl., Tab 1 ¶ 1 ("Items payable under this Loan Agreement will appear on the monthly billing statements for your T-Mobile USA, Inc. account for your T-Mobile wireless service plan."). Plaintiff electronically signed the Loan Agreement on June 9, 2015.[4]  Muzio Decl. ¶ 7.  Just above Plaintiff's signature line appeared the express warning that Plaintiff should not sign the Agreement unless he had read its terms. Muzio Decl. ¶ 8 & Tab 1 at p.5 ("Do not sign this Loan Agreement before you read it . . . .").

When he signed the Loan Agreement, Plaintiff agreed to arbitrate, rather than litigate, any and all claims or disputes in any way related to or concerning the Loan Agreement:

> **WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS LOAN AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

---

[4] The original parties to the Loan Agreement were Plaintiff and WebBank. WebBank immediately assigned the Loan Agreement to T-Mobile. Compl. ¶ 26 ("WebBank immediately assigned its rights under the Device Agreement to T-Mobile."). As such, T-Mobile acquired all of WebBank's rights under the Loan Agreement, as well as the ability to enforce them. *See* Muzio Decl., Tab 1 ¶ 7 ("[T]he assignee will be entitled to enforce this Loan Agreement to the same extent as us."). Plaintiff alleges that T-Mobile notified him of the assignment in a letter dated June 9, 2015, stating that "[t]here will be no changes to your loan: all established terms and conditions and payoff dates remain the same." Compl. ¶ 27 & Exhibit to Compl.

Muzio Decl. ¶ 9 & Tab 1 ¶ 3 (emphasis in original).  Plaintiff's Loan Agreement also included a

class action waiver:

> **CLASS ACTION WAIVER. WE EACH AGREE THAT ANY PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.**

Muzio Decl. ¶ 9 & Tab 1 ¶ 8 (emphasis in original).

The Loan Agreement allowed Plaintiff the opportunity to opt out of both the arbitration

obligation and the class action waiver:

> Notwithstanding the above, **YOU MAY CHOOSE TO PURSUE YOUR CLAIM IN COURT AND NOT BY ARBITRATION IF YOU OPT OUT OF THESE ARBITRATION PROCEDURES <u>WITHIN 30 DAYS</u> FROM THE DATE OF THIS LOAN AGREEMENT**. You may opt out of these arbitration procedures by calling 1-888-919-9185 or by completing the opt-out form located at www.eipprogramdisputeresolution.com.  **Any opt-out received after the Opt Out Deadline will not be valid and you must pursue your claim in arbitration or small claims court.**

Muzio Decl. ¶ 10 & Tab 1 ¶ 3 (emphasis in original).  Plaintiff did not opt out at any time.  Muzio

Decl. ¶ 10.

Plaintiff's arbitration agreements create a mechanism for the efficient and economical

resolution of disputes.  For claims (like Plaintiff's) totaling less than $75,000, T-Mobile pays all

filing, administration, and arbitrator fees.  Muzio Decl., Tab 1 ¶ 3.  Arbitrations are to be conducted

by the American Arbitration Association ("AAA"), pursuant to its rules, including consumer-

friendly procedures specifically designed for consumer disputes.  *Id.*  The arbitrator has the

authority "to award on an individual basis any relief that would be available in a court, including

injunctive or declaratory relief and attorneys' fees."  *Id.*  Although Plaintiff has a mechanism for

recovering his attorneys' fees, T-Mobile agrees not to seek an award of attorneys' fees – even if they would be available under applicable law – except for claims determined to be frivolous.  *Id.*

## II.     Service Agreement

On the same day Plaintiff entered into the Loan Agreement, he also entered into a Service Agreement with T-Mobile and activated T-Mobile service on the four iPhone 6 devices that are the subject of his Loan Agreement.  Muzio Decl. ¶ 12.  Plaintiff electronically affixed his signature to the Service Agreement and thereby accepted its terms.  Muzio Decl. ¶¶ 12, 13 & Tab 2 at p.1 (emphasis in original) (informing Plaintiff that he accepts terms "**[b]y signing this form or activating or using T-Mobile service**.").

Plaintiff's Service Agreement includes an arbitration provision, requiring individual arbitration of disputes unless Plaintiff timely opts out:

> **T-Mobile requires ARBITRATION OF DISPUTES UNLESS I OPT-OUT WITHIN 30 DAYS OF ACTIVATION.**     See T-Mobile's Terms and Conditions for details . . . .

Muzio Decl. ¶ 19 & Tab 2 at p.2 (emphasis in original).  The Service Agreement incorporates by reference T-Mobile's Terms and Conditions and notifies Plaintiff that he could "**obtain copies of T-Mobile's Terms and Conditions and my Rate Plan specific terms at www.T-Mobile.com/ terms-conditions [], or by calling Customer Care at (800) 937-8997 or 611 from my T-Mobile phone**."  Muzio Decl. ¶ 14 & Tab 2 at p.1 (emphasis in original).

At the time Plaintiff executed the Service Agreement, T-Mobile's March 18, 2015 Terms and Conditions (the "Terms & Conditions") were in effect and available to Plaintiff pursuant to the instructions in the Service Agreement.  Muzio Decl. ¶¶ 14, 15 & Tab 3.  The Terms and Conditions informed Plaintiff at the outset that he should read them carefully because, among other things, they require arbitration of disputes:

> **Please read these T&Cs carefully.** They cover important information about T-Mobile services provided to you . . . **These T&Cs include information on** . . . **resolution of disputes by arbitration instead of in court.**

Muzio Decl. ¶ 16 & Tab 3 at p.1 (emphasis in original).  The Terms and Conditions also inform Plaintiff that he will accept them "by doing any of the following:

> (a) giving us a written or electronic signature, or telling us orally that you accept; (b) activating Service; (c) using the Service; (d) using your service after you make a change or addition; (e) paying for the Service or a "T-Mobile Device" (a Device purchased from T-Mobile, a T-Mobile dealer, or other T-Mobile authorized retailer ("Dealer")); or (f) opening the T-Mobile Device box or failing to activate Service within 30 days after the purchase of your T-Mobile Device, unless returned within the Cancellation Period (as defined in Section 4).

Muzio Decl. ¶ 17 & Tab 3 ¶ 1.  The Terms and Conditions explicitly state: "**IF YOU DON'T WANT TO ACCEPT, DON'T DO ANY OF THESE THINGS**."  *Id.* (emphasis in original).  Plaintiff agreed to and accepted the Terms and Conditions by Signing the Service Agreement, activating T-Mobile service, using T-Mobile service, paying for T-Mobile service, and making payments on the four iPhone 6 devices.  Muzio Decl. ¶ 18.

The arbitration agreement set forth in the Terms and Conditions (and the Service Agreement by reference) is broad in scope:

> **Dispute Resolution and Arbitration. WE EACH AGREE THAT, EXCEPT AS PROVIDED BELOW [], ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT.**

Muzio Decl. ¶ 20 & Tab 3 ¶ 2 (emphasis in original).

The arbitration provision found in the Service Agreement and Terms and Conditions is identical to the one found in the Loan Agreement in all material respects.  *Compare* Muzio Decl.,

Tab 3 ¶ 2 *with* Muzio Decl., Tab 1 ¶¶ 3, 8 (containing identical class action waiver provisions, the same opt-out procedures, the same arbitration procedures and arbitrator authority, and the same requirement of pre-litigation notice).   Again, Plaintiff did not opt out of arbitration at any time. Muzio Decl. ¶¶ 10, 21.   Plaintiff also did not provide pre-litigation notice of his dispute to T-Mobile, as required by both contracts.  *Id.* at ¶¶ 11, 22.

<u>**ARGUMENTS AND AUTHORITIES**</u>

**I.      The FAA Applies and Requires Enforcement of Plaintiff's Arbitration Agreements.**

The FAA preempts state law and requires the enforcement of arbitration agreements by expressly providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2.   The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce."   *Id.*   The Supreme Court has expansively construed the phrase "involving commerce," interpreting it as extending the FAA's reach to the full limit of Congress' Commerce Clause power.  *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).

There is no question that the FAA applies to Plaintiff's arbitration agreements.  Indeed, the parties expressly agreed that each "Agreement affects interstate commerce so that the Federal Arbitration Act and federal arbitration law apply."   *See* Muzio Decl., Tab 1 ¶ 3 & Tab 3 ¶ 2. Moreover, the FAA applies because the contracts between T-Mobile and Plaintiff are contracts between citizens of different states.  T-Mobile is a foreign corporation, incorporated in Delaware and having its principal place of business in Washington, and Plaintiff is a Florida citizen.  Compl. ¶¶ 8, 9.   Contracts between citizens of different states affect commerce, rendering the FAA applicable.  *See, e.g.*, *Sanchez v. J.P. Morgan Chase Bank, N.A.*, No. 14-20468-civ, 2014 WL 4063046, at *3 (S.D. Fla. Aug. 15, 2014).   Finally, the FAA applies because Plaintiff's Service Agreement and Loan Agreement relate to the provision of wireless service to Plaintiff both inside

and outside of Florida, further making clear that the agreements affect interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254–55 (1989) (telecommunications industry constitutes interstate commerce).

"The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotations omitted). The FAA both "embod[ies]" and "declare[s] a national policy favoring arbitration." *Id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 333 (citations and internal quotations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 339 (citations omitted). This purpose is readily apparent from the FAA's text:

> Section 2 makes arbitration agreements valid, irrevocable, and enforceable as written []; § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement; and § 4 requires courts to compel arbitration in accordance with the terms of the agreement upon the motion of either party to the agreement.

*Id.* at 344 (internal quotations omitted).

Time after time, the Supreme Court has recognized this strong public policy in favor of arbitration. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001) (recognizing the pro-arbitration purposes of the FAA); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)) (enforcing agreement to arbitrate and holding that Congress intended the FAA "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts"); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 510–11 (1974) (quoting H.R.

Rep. No. 68-96, at 1, 2 (1924)) (the FAA expresses Congress' intent to reverse "centuries of judicial hostility to arbitration agreements"); *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1057 (11th Cir. 1998) ("The FAA creates a presumption in favor of arbitrability; so, parties must clearly express their intent to exclude categories of claims from their arbitration agreement."); *Randolph v. Green Tree Fin. Corp.-Ala.*, 244 F.3d 814, 818–19 (11th Cir. 2001) ("According to the Supreme Court, the last time this case was before us we made the mistake of giving too little weight to the FAA's pro-arbitration policy. We decline to make the same mistake again."). Florida and Utah law, which govern the two contracts at issue, are in accord. *See, e.g.*, *Glob. Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 397 (Fla. 2005) ("In Florida as well as under federal law, the use of arbitration agreements is generally favored by the courts."); *Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996) ("[A]rbitration agreements are favored in Utah.").

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"). Thus, the FAA requires courts to "rigorously enforce" agreements to arbitrate. *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). In fact, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Perera v. H & R Block E. Enters.*, Inc., 914 F. Supp. 2d 1284, 1288 (S.D. Fla. 2012). The Eleventh Circuit has held that such evidence will be found only if the parties "clearly express their intent to exclude categories of claims from their arbitration agreement." *Paladino*, 134 F.3d at 1057.

The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at

357.  "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results."  *Concepcion*, 563 U.S. at 346.  Accordingly, this Court should grant T-Mobile's Motion and require Plaintiff to arbitrate his claims because, as set forth below: (i) Plaintiff entered into written agreements to arbitrate; and (ii) Plaintiff's claims fall within the scope of those agreements.  *See* 9 U.S.C. §§ 3, 4.

## II.   Plaintiff Agreed to Arbitrate His Dispute with T-Mobile.

Plaintiff entered into two contracts in which he expressly agreed to arbitrate, instead of litigate in court, the claims asserted in this lawsuit against T-Mobile.  *First*, by signing the Loan Agreement, Plaintiff agreed to arbitrate "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS LOAN AGREEMENT.**"  Muzio Decl. ¶ 9 & Tab 1 ¶ 3 (emphasis in original).  *Second*, by signing the Service Agreement, Plaintiff agreed to arbitrate disputes according to the details set forth in the Terms and Conditions (which Plaintiff expressly agreed to abide by when he signed the Service Agreement).[5]  *See Temple Emanu-El of Greater Fort Lauderdale v. Tremarco Indus., Inc.*, 705 So. 2d 983, 984 (Fla. Dist. Ct. App. 1998) (alterations adopted) ("the doctrine of incorporation by reference requires that there must be some expression in the incorporating document of an intention to be bound by the collateral document"); *see also Del Orbe v. Royal Caribbean Cruises, Ltd.*, 549 F. Supp. 2d 1365, 1371 (S.D. Fla. 2008) (finding an arbitration agreement enforceable where it was contained in a separate contract but "expressly incorporated by reference into the individual employment agreement executed by the parties").  As set forth in Section III below, these arbitration agreements plainly encompass the claims Plaintiff attempts to assert here and require Plaintiff to resolve his claims in arbitration

---

[5] Plaintiff also agreed to the Terms and Conditions by activating T-Mobile service, using T-Mobile service, paying for T-Mobile service, and making payments on the four iPhone 6 devices.  Muzio Decl. ¶ 18.

rather than in court.

### III.    Plaintiff's Claims Fall Within the Scope of His Arbitration Agreements.

Plaintiff's Loan Agreement provides that:

> **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS LOAN AGREEMENT <u>WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT</u>.**

Muzio Decl. ¶ 9 & Tab 1 ¶ 3 (emphasis in original, underline added).  The Terms and Conditions likewise provide that:

> **ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, <u>WILL BE RESOLVED BY BINDING ARBITRATION</u>, RATHER THAN IN COURT.**

Muzio Decl. ¶ 20 & Tab 3 ¶ 2 (emphasis in original, underline added).  Arbitration provisions like these have been interpreted as "broad and unambiguous."  *See Sanchez*, 2014 WL 4063046, at *3; *see also In re Managed Care Litig.*, No. 00-1334-md, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009).  Plaintiff's claims fall squarely within the broad and unambiguous scope of *both mandatory* arbitration provisions, and they must be arbitrated.

It is beyond dispute that Plaintiff's claims relate to and concern the Loan Agreement. Plaintiff alleges that the acceleration of amounts due under the Loan Agreement upon termination of the Service Agreement "is an unlawful termination fee that violates the device contract." Compl. ¶ 1.  These allegations – which form the crux of Plaintiff's claims – concern or relate to the Loan Agreement (or, as Plaintiff calls it, "the device contract").  Moreover, Plaintiff's claims cannot be resolved without reference to the Loan Agreement.  Plaintiff bases his FCCA and FDUTPA claims on the allegation that he "did not agree[] to any acceleration provision in [his] Device Agreement."  Compl. ¶ 5.  Yet, contrary to this allegation, the Loan Agreement (again,

referred to by Plaintiff as "the Device Agreement") plainly states that Plaintiff must maintain T-Mobile service throughout the term of the Loan Agreement or else the full unpaid balance would be immediately due:

> You will be in default if you . . . (c) **fail to maintain a T-Mobile Service Plan for any Equipment items purchased with the proceeds of this Loan Agreement** . . . . **Except where prohibited by law, if you are in default under this Loan Agreement, we may declare the remaining unpaid balance of the loan immediately due and payable.**

Muzio Decl., Tab 1 ¶ 2 (emphasis in original).  Plaintiff's claims are premised on the Loan Agreement and require analysis of the Loan Agreement's terms (which provide T-Mobile with a complete defense to Plaintiff's claims).  Accordingly, Plaintiff's claims fall squarely within the scope of his arbitration obligation, and they must be arbitrated.  *See, e.g.*, *Axa Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1330, 1344 (S.D. Fla. 2009) (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 75 (2d Cir. 1997)) (emphasis added) ("If the allegations of the plaintiff 'touch matters covered by' the parties' agreement to arbitrate, then such claims *must* be arbitrated . . . .").

Plaintiff's claims also relate to and concern T-Mobile's services, devices, and products and constitute a billing dispute.  Plaintiff alleges that when he terminated his Service Agreement, T-Mobile unlawfully accelerated the amounts Plaintiff owed for his devices.  Compl. ¶ 1.  Plaintiff also contends that T-Mobile's attempt to collect this debt was unlawful.  *Id.* at ¶ 48.  The connection to T-Mobile services and devices/products could not be clearer.  And Plaintiff's claim that T-Mobile unlawfully billed him for accelerated debt amounts to a billing dispute.  *Id.*

Because Plaintiff's claims fall squarely within the scope of his arbitration obligations, they must be arbitrated.  *See Concepcion*, 563 U.S. at 333; *see also Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration").

## IV.    Plaintiff's Arbitration Agreements are Valid and Enforceable Under State Law.

Although the FAA and the strong federal policy in favor of arbitration apply to Plaintiff's arbitration agreements, state law applies to determine whether Plaintiff's arbitration agreements are enforceable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (federal courts "should apply ordinary state-law principles that govern the formation of contracts" in determining enforceability of an arbitration agreement). Even when applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities to the scope of the arbitration clause itself resolved in favor of arbitration." *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1353 (11th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015) (citing *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989)).

Here, Florida law governs Plaintiff's Service Agreement and the incorporated Terms and Conditions, while Utah law governs Plaintiff's Loan Agreement. *See* Muzio Decl., Tab 3 ¶ 27 (agreement with T-Mobile is governed by the law of the state in which Plaintiff's billing address is located); Compl. ¶ 8 (identifying Plaintiff as a Florida resident); Muzio Decl. ¶ 12 (Plaintiff's billing address is located in West Palm Beach, Florida); Muzio Decl., Tab 1 ¶ 12 ("This Loan Agreement is governed by . . . the laws of the state of Utah".). The laws of both states support the enforcement of Plaintiff's arbitration agreements with T-Mobile.

Under Florida law, "a court must look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration." *Sitarik v. JFK Med. Ctr. Ltd. Partnerships (JFK)*, 7 So. 3d 576, 578 (Fla. Dist. Ct. App. 2009). Similarly, under Utah law, there must be "direct and specific evidence of an agreement to arbitrate." *Ellsworth v. Am. Arbitration Ass'n*, 148 P.3d 983, 987–88 (Utah 2006). Under the facts and circumstances of this

case, Plaintiff's intent to arbitrate claims relating to his agreements with T-Mobile could not be plainer.  In electronically accepting the arbitration provision of the Loan Agreement, Plaintiff agreed to arbitrate "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THIS LOAN AGREEMENT**."  Muzio Decl. ¶ 9 & Tab 1 ¶ 2 (emphasis in original).  Plaintiff similarly accepted the terms of the Service Agreement and Terms and Conditions, including an agreement to arbitrate "**ANY AND ALL CLAIMS OR DISPUTES IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OUR PRIVACY POLICY, OUR SERVICES, DEVICES OR PRODUCTS, INCLUDING ANY BILLING DISPUTES, WILL BE RESOLVED BY BINDING ARBITRATION OR IN SMALL CLAIMS COURT**."  Muzio Decl. ¶ 20 & Tab 3 ¶ 2 (emphasis in original).  Accordingly, both of Plaintiff's arbitration agreements are enforceable under the applicable state laws.[6]

**V.      Dismissal or Stay of the Action Is Appropriate Because Plaintiff's Claims Must Be Submitted to Arbitration.**

Where, as here, a plaintiff entered into enforceable arbitration agreements and the claims at issue fall within the scope of those agreements, "the FAA requires a court to either stay or dismiss a lawsuit and to compel arbitration."  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  Accordingly, Plaintiff's agreements to arbitrate mean that this Court lacks subject matter jurisdiction, and this case should be dismissed under Rule 12(b)(1).  *See Perera v. H & R Block E. Enterprises, Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (in granting motion under

---

[6] Under both Florida and Utah law, an arbitration agreement is enforceable unless it is both procedurally and substantively unconscionable.  *Murphy v. Courtesy Ford, LLC*, 944 So. 2d 1131, 1134–35 (Fla. 3d DCA 2006); *Sosa v. Paulos*, 924 P.2d 357, 360 (Utah 1996).  Plaintiff bears the burden of proving unconscionability.  *Murphy*, 944 So. 2d at 1134–35; *Sosa*, 924 P.2d at 360.  No basis exists for such a finding here.  That is particularly so given Plaintiff's ability to opt out of arbitration completely.  *See, e.g., Owings v. T-Mobile USA, Inc.*, 978 F. Supp. 2d 1215, 1224 (M.D. Fla. 2013) ("The caveat that the consumer may opt-out of arbitration [with T-Mobile] within thirty days of signing the agreement obviates any argument of procedural unconscionability.").

Rule 12(b)(1), noting that dismissal is appropriate when all claims are subject to enforceable agreements to arbitrate); *see also Ferriol v. Parrillada Las Vacas Gordas, Inc.*, No. 15-20636-civ, 2015 WL 1968848, at *4 (S.D. Fla. Apr. 30, 2015) (granting motion to compel arbitration and dismiss claims); *Monteverde v. W. Palm Beach Food & Beverage, LLC*, No. 9:15-cv-81203, 2016 WL 1161224, at *11 (S.D. Fla. Mar. 24, 2016) (same).

Alternatively, the Court should stay this case because Plaintiff's claims must be submitted to arbitration. The FAA provides that, once satisfied that the suit should be moved into arbitration, a court "***shall*** on application of one of the parties ***stay the trial of the action*** . . . ." 9 U.S.C. § 3 (emphasis added). This section requires courts to stay judicial proceedings, upon application of a party, if the court determines that the matter raised is one which should have been referred to arbitration. Because Plaintiff's arbitration agreements require him to arbitrate the claim asserted here, Section 3 applies, and this case should be stayed.

## CONCLUSION

For all the reasons stated herein, Plaintiff is contractually required to arbitrate, rather than litigate in court, his individual claims against T-Mobile. Accordingly, T-Mobile respectfully requests that this Court grant its Motion to Compel Arbitration.

Dated:  April 22, 2016

Respectfully submitted,

*/s/  Kristy Brown*
Kristine McAlister Brown
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
*kristy.brown@alston.com*

Scott G. Hawkins

JONES FOSTER JOHNSTON & STUBS, P.A.
505 S Flagler Dr # 1100
West Palm Beach, Florida 33401
Telephone: (561) 650-0460
Facsimile: (561) 650-5300
*shawkins@jonesfoster.com*

*Counsel for Defendant T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2016, I electronically filed the foregoing with the clerk of

the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

James L. Kauffman
Bailey & Glasser LLP
1054 31st Street, Suite 230
Washington, DC 20007
*jkauffman@baileyglasser.com*

J. Dennis Card, Jr.
Darren Newhart
Hicks Motto & Ehrlich, P.A.
3399 PGA Boulevard, Suite 300
Palm Beach Gardens, FL 33410
*dcard@hmelawfirm.com*

*Counsel for Plaintiff and the Putative Class*

*/s/  Kristy Brown*
Kristine McAlister Brown
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia  30309-3424
Telephone:  (404) 881-7000
Facsimile:  (404) 881-7777
*kristy.brown@alston.com*